May it please the Court, Alice Klapman for Plaintiff's Appellants. Could you speak louder or into the microphone? Sure, Your Honor. Alice Klapman for Plaintiff's Appellants. Is that better? Yes, thank you. Okay. This preliminary injunction appeal concerns the rights of thousands of Arizona women each year to up-to-date modern medical care, and specifically to access medication abortion according to the regimen that has long been the accepted standard of care and has been endorsed by both the American Medical Association and the American College of Obstetricians and Gynecologists. Medication abortion is an important advance in women's health care. It affords women an extremely safe and non-surgical method of terminating an early pregnancy. The law challenged here either bans medication abortion entirely or restricts it to a severely outdated regimen, but either way, it would for no reason turn back the clock over a decade for women's health care. On the record below, plaintiffs have more than raised serious questions going to the merits of their claims and demonstrated a balance of harms tipped sharply in their favor. Unless the panel's questions take me elsewhere, I will take my time to discuss plaintiffs' vagueness and undue burden claims. Yeah, I'm speaking only for myself. I would prefer that you at least start with the undue burden issue, because I didn't see the vagueness that you claim, but I'm very interested in the undue burden analysis. Certainly, Your Honor. The district court erred here in two respects with respect to undue burden. The court erred in holding that the law could be reasonably understood to serve women's health in some legitimate fashion as long as the legislature claimed that's what the law did, and despite overwhelming contrary evidence. That was error because Casey took care to verify that the one health provision restriction it upheld actually promoted women's health, and that is in line with what the Supreme Court has always done, analyze the facts independently and consult evidence outside legislative findings. Is this a two-step analysis or a one-step analysis? In other words, do we first look and see if there's a rational basis for the legislature's If there isn't end of inquiry, but if there is, don't we still have to go on to determine whether, even though it's rational in some way, it's an undue burden on the right to terminate a pregnancy? It is a two-step process, Your Honor, but I would – I would submit that it is not a rational basis test, the first step of the process, because it requires the court taking care to verify that the law serves the asserted interest. But we do that in no other area of the law with respect to rational basis, and I'm not – I mean, what you're saying is there's kind of – at both steps of the analysis, you're saying it's a higher burden to uphold the law, but I'm not sure why that is so. Why isn't rational basis what it always is, and then we determine whether there's an undue burden? Because, Your Honor, what the court said in Casey was that it's necessary to give real protection to a woman's right to choose. Well, I understand that, but it can be done in any number of ways, including being serious about the undue burden aspect of the analysis. Absolutely, Your Honor. But if States could simply say that they were serving women's health and, for that reason, restrict abortion in a number of ways, that right would not have real protection, even if some women were still serving women's health. I don't understand why that's – why that is so. Let's say you can demonstrate with some study that may be not even particularly valid, but let's say you can demonstrate that a two-week waiting period is somehow beneficial to women's health. That still could be, obviously, an undue burden, even if it's rational at some level. So I'm not sure why both halves of that equation have to be as you have stated it. They have to be that way, Your Honor, because, as the court made clear in Casey, it was balancing important State interests against important individual interests, and recognizing that the State has important interests in protecting women's health and advancing fetal life, but at the same time, women have important interests in their reproductive freedom. And so it's necessary to look at the evidence and make sure that the State is actually advancing an important interest. I guess maybe it's a semantic question, because it seems to me at the undue burden step that a burden is undue almost by definition if it's – if the evidence doesn't support that there is much help. I'm not stating that extremely well, but rational basis is a pretty low threshold, and the legislature doesn't have to be 100 percent correct in its findings, or it doesn't even have to have findings if one can imagine a rational ground for the legislation. But if there is basically no factual match between the requirement and the goal, doesn't that just automatically make the burden undue? Yes, Your Honor. That certainly was the court's analysis, the Seventh Circuit's analysis in Van Hollen, and it's a fair reading of Casey. If you look at how Casey analyzed the various restrictions, Casey placed a very high burden on the spousal notice restriction because Casey was more skeptical about the State interests at stake there. And so that certainly is a fair reading of Casey, that even the term undue burden suggests a balanced weighing of the evidence. Can you describe for us what you consider to be the additional burden imposed by the Arizona law for medication-induced abortions compared to the practice that had previously been established as evidence-based practice for medication-induced abortion? So what hardships have been imposed by this law? And then we'll get to the, okay, and what are the reasons for them so we can assess both parts of that undue. So what are the burdens? Sure, Your Honor. And I would reiterate our position that the language plainly bans medication abortion. It is nearly identical to the statutes in Oklahoma and North Dakota that were found to ban medication abortion. I'm pre-permitting that for the moment. I'm assuming that the legislation permits abortions performed under the OM label procedures. Sure, Your Honor. The burdens are multifold. First, between seven and nine weeks of pregnancy, the law would act to ban medication abortion entirely, including for women who need medication abortion for health reasons because of physical conditions, for mental health reasons because of past trauma, for safety reasons because they are victims of domestic violence and need to conceal an abortion. It would ban medication abortion for those women. That would be particularly burdensome for women in Northern Arizona because they have only one abortion provider in that entire region, and that provider only provides medication abortion. So those women in Northern Arizona would have to drive hundreds of additional miles to reach a provider. Additionally, for any women who could still obtain a medication abortion in Arizona and our evidence showed that this is very few women because when you look at what happened in Ohio, the number of women who were able to obtain a medication abortion under these restrictions fell by about two-thirds in a very short period of time. But for those women who could conceivably get a medication abortion under the law's restrictions, these women would have to pay an additional $200 to ingest completely unnecessary medication, Mifepristone, three times the necessary dosage. And that would come with additional side effects as well. They would have to come into the clinic in extra time to take the misoprostol, which is extremely burdensome both because it imposes additional travel requirements and because it forces the woman, many women, to undergo the effects of the misoprostol while they are traveling home instead of, as they currently do now, in a safe place of their choosing, with surrounded by family or other loved ones that they choose to experience the abortion with. Furthermore, what this law would impose on women is a regimen that has been demonstrated to be significantly less effective. So the rate of required surgical follow-up is less than 2% under the current standard of care. This law would require a regimen that has about an 8% risk of surgical follow-up being needed. So all of these, in combination, are very onerous burdens. The regimen would be less effective, much more expensive, expose women to unnecessary side effects, and far less accessible. OK, now, this may be that the other side will be more enthusiastic in describing what I'm about to ask about. But let me ask you, OK, so what are the reasons favoring the Arizona law? There are none, Your Honor. There is no evidence, and that is what the district court found, there is no evidence supporting any safety advantage to requiring the regimen outlined on the final printing label. Now, the district court, nonetheless, held that there was not a sufficient chance of success in the lawsuit to warrant the preliminary injunction on the ground that it was a sufficient answer that other methods of abortion were still available. How do you respond to that? I respond to that by saying, to begin with, the court denied plaintiffs a health exception. So it's clear that on the record, while there may be another method available, surgical abortion, that would expose some women to some serious effects and might be so severe as to be prohibitive. There is actually evidence in the record that some women fear surgery to such a degree that they would forego their right to choose entirely if denied a non-surgical alternative. And that is in Nurse Otterstein's declaration. Is there any evidence to contradict that? I read that declaration. Is there any evidence that contradicts that statement that she made? No. The defendants submitted no evidence below. They simply relied entirely on the legislative findings, which do not speak to that  These women would be denied a method that they prefer, have very strong reasons for preferring. And this court has never held that being denied your only non-surgical alternative for abortion is not an undue burden. To the contrary, this court has recognized burdens as substantial obstacles if they are harmful and wholly unnecessary, regardless of whether they can be demonstrated beforehand to be insurmountable. So the court's analysis, even for women who can access surgical abortion, and again, that is going to exclude classes of women, including many Northern Arizona women, even for these women, the law imposes a substantial obstacle because it imposes all of these other burdens that I was just discussing, including cost. And this court's analysis in Eden was clear that factors like cost, decreased provider availability, and long-term discouragement of the provision of abortion in the state, all are factors that a court needs to consider in the substantial obstacle analysis. You were going to address vagueness? Yes. For a minute or two here? Okay, sure, Your Honor. As plaintiffs have explained, and as the only two courts to have looked at similarly worded statutes found, this law, it's plain terms, effectively banned medication abortion because they make it impossible to administer misoprostol. That drug is not labeled for abortion. And courts do not have the authority to do what the district court did here, which is resolve the problem by rewriting plain statutory language. Defendants' response to this law is that the court should be able to do that, but can the district court certify the vagueness issue to the Arizona Supreme Court? Yes. The district court could have done that, and plaintiffs admit that the court should have done that. If there's any way to rewrite this statute to provide sufficient clarity, it is the role of the State court to do so. And plaintiffs have submitted in their briefing the statutory authority for that. If we were to decide this case, and this is just a hypothetical at this point, but if we were to agree with your arguments about undue burden, would we have to reach the vagueness question? No, Your Honor, you would not. At this stage of the litigation, because there's just a – That is correct. This is purely preliminary, and this is going back to the district court for evidentiary trial. Yes. Just to finish responding to – to finish fleshing out the vagueness claim. Defendant's response to plaintiff's arguments merely confirms that this law is unconstitutionally vague. Defendant proposes two alternative contradictory readings of the statute that defendant claims would fix the problem of the statute prohibiting abortion. But if the agency charged with enforcing the law can't itself say what the law means, then that is the very definition of a due process violation. And as I mentioned before, to the extent that any court could resolve this problem, it would be the state supreme court. Finally, Your Honor, even if the district court had been correct that plaintiffs had not demonstrated a likelihood of success on our facial undue burden claim, it erred in denying the alternative relief plaintiffs sought, which was limited relief as applied to patients for whom medication abortion is significantly safer than surgical abortion, as was granted by the Sixth Circuit in DeWine. Plaintiffs followed the directions in Gonzales for seeking such-as-applied relief and presented solid evidence that that relief was necessary. How would the district court frame such an order? I'm sorry, Your Honor? I'm sorry. How would the district court frame such an order? It would grant an injunction preserving the ability to prevent defendant from enforcing the law against providers who provided medication abortion, which in the provider's judgment was necessary for the health of the patient. Is that the way the injunction was framed in Ohio? Yes. I don't have the exact wording here, but the yes. For these reasons and the reasons stated in their briefs, plaintiffs respectfully asked this Court to extend the injunction already in place, and I would stress that this is a preliminary stage of the case, and to remand this case for trial under the correct legal framework. And I will reserve the rest of my time for rebuttal. You may do that. Good morning, and may it please the Court, Robert Ellman for the Arizona Department of Health Services. Your Honors, in order to carry their burden to demonstrate the likelihood of success on the merits, in this case, the appellants have to not only expand the due process right that was recognized in Roe and refined in Casey, they also have to restrict the permissible scope of the State's regulation. The right identified and refined under the Due Process Clause is the ultimate right to decide to terminate a previability pregnancy. It is not the right to choose the method by which you do so. And the United States Supreme Court in Gonzales v. Carhart was very clear that if the State regulation leaves in place other means, and I'm quoting now, commonly used and generally accepted, it does not construct a substantial obstacle to the previability of pregnancy. And so the State's ruling in that case, and I quote, I'm quoting from page 165 in Gonzales, that effectively ends the substantial burden inquiry in this case. We have to start with the rational basis. And I have some difficulty, even at that stage of the analysis, for two separate reasons, and I'd like you to address both of them. The first is that one could look at this legislation as being essentially pretextual and an effort simply to flat-out reduce the number of abortions by any means. That's one concern that I have. The second is that the legislative findings are all about on-label versus off-label, and I wonder if that is legally available to the State to rely on in view of the United States Supreme Court's decision in Buckman Company, which says that the FDA does not regulate the practice of medicine and that off-label uses of medication are accepted practice. So there's a very different concern, but I'd appreciate your addressing both of those. Certainly, Your Honor. The district court found in this case, at page 3 of its order, that the primary if not sole purpose of this legislation is maternal health. And that is apparent not only from the face of the statute, but from the expressions of the legislature in drafting it. There is no evidence in this case that the statute is pretextual. Now, in the opening brief at pages 25 and 30, the appellants state that the purpose of the statute is pretextual. But then in the reply brief at note 8, they say that they are not arguing that the purpose is illegitimate. So I think they have abandoned their argument that this does not have a legitimate purpose. But the legitimate purpose is apparent, as I said, from not only the face of the statute, but the legislative expressions. The FDA does not regulate the practice of medicine. That's correct. But they do exclusively evaluate the safety of newly marketed drugs. But what do you take from the Supreme Court's decision, which specifically for about a paragraph goes on to discuss the importance of off-label uses and the acceptability of off-label uses? Is the legislature, notwithstanding that, entitled to say, well, we don't care what the Supreme Court says, we're going to limit physicians to on-label uses? I don't think that's what is going on here, Your Honor. When the legislature acted in this instance, it did so because of the findings of dangerous off-label uses associated with Mifepristone. There were Except that the findings don't actually link the eight deaths out of however many millions of administrations to off-label use. Those deaths, in the findings at least, are linked to use without specifying that it was off-label or on-label. Okay. Actually, Your Honor, what the FDA was careful to say was that they have not established that the off-label practices associated with those, actually it was 14 deaths, were caused by the off-label use. But there is a 100 percent correlation between the failure to use the FDA-approved protocol and the incidence of those deaths. So that is what the legislature was relying on. Is there any evidence at all that the evidence-based, I'll call it that, protocol is more dangerous, less dangerous than the label-based protocol? What do we know about that? There is medical uncertainty on that point, Your Honor. One of the primary What's the evidence in the record as we now have the record? That the so-called evidence-based protocol does not require a woman to return for the going to be done because the woman mistakenly believes that the pregnancy has been terminated or that it will be done incorrectly. So that danger does not exist under the FDA-approved protocol. I thought there was evidence from the plaintiff's side that with the newest format, the evidence-based format, there were no deaths reported with something like 711,000 uses. Is that correct? Is that evidence in the record? I don't dispute that, Your Honor. I believe that. I have no reason to doubt that representation. But I want to be clear that this case does not resolve to whether the appellant's preferred protocol is better or even safer than the FDA-approved protocol, because this part of the analysis goes to rational basis. And there are really two parts. But it also goes to undue burden. Because if the burden is great and the rationale is extremely flimsy, then the burden becomes undue. It seems like it has to be a sliding scale. If the burden is please give us your phone number in case we need to call you, that's a small burden, so you don't need much justification. If the burden is extremely great, it seems to me that you need a much tighter fit between the burden and the reasons and the efficacy of that burden. Well, let me try to answer that, Your Honor, both in terms of the statutory purpose and the extent of the substantial obstacles that the appellant's claim exists here. You have an identified set of data from the FDA that do establish dangers and risks associated with medication abortion that are resolved by following the FDA protocol, regardless whether the so-called evidence-based protocol is even safer. So you have what appellants do not disagree is a safe protocol. On the other hand, you have off-label protocols that are dangerous and are associated with it. Do you have any evidence that what you call the dangerous off-label protocols are  Is there any evidence on the record to that effect? There is no evidence at all, Your Honor. Well, the evidence we do have in the record, I'm now just reading from a declaration of this Dr. Grossman, that we've got as many as 8 percent of women following the on-label protocol requiring a DNC due to excessive bleeding, compared to less than 2 percent of the women following the safety evidence-based protocol. And there are other things as well. Do you have any evidence to contradict that? So I'm looking at the record as we now have it. I don't have any evidence of what protocols clinics other than the appellants are using, Your Honor. I have no evidence of that at all. We've not proceeded to that stage of litigation. But what I'm looking at then, and I think you're getting the point, the evidence now in the record seems to me to show that the evidence-based protocol is both safer, less expensive, more convenient than the on-label protocol. Now, it may be that at trial you'll have different evidence, but the evidence we've got now is what we heard your adversary outline, and I've just given you a piece of it. If that's what the evidence is, why is this not an undue burden? Because the constitutional validity of the statute does not depend on whether the appellant's protocol is better or safer than the FDA-approved protocol. Well, wait a minute. Maybe we're disagreeing as to the meaning of undue burden. I have to say, I think that Judge Posner got it right in the Seventh Circuit when he says burden is the – and I'm basically agreeing with what Judge Graber suggests in her questioning. Well, it doesn't – we're not talking about burden in some absolute sense. We're talking about undue burden. And so you look at what is the burden, and then you look at what the justification is. Now, at the moment, I see some real burden, and I don't see in the record that we now have any medically-based justification for it. What am I missing? I think you're taking me off of the facial validity argument and onto the substantial burden argument, Your Honor. Is that fair to say? I don't want to say substantial. No, I want to say – I want to use the case law word, which is undue burden. Yes. No, that's exactly where I'm headed. Okay. Well, then, let me turn specifically to that. First of all, contrary to appellant's representations, this is not a ban on medication abortion in Weeks 8 and 9 of a woman's pregnancy. It is a limitation on one method of abortion provided by one category of provider. And we know from the Gonzalez case that even a method ban does not impose an undue burden if another safe means of abortion is still available, which it is in this case because surgical abortion is not only extremely safe, as appellants concede, but it's still used by most women who obtain an abortion in the relevant time period. I wanted to ask you briefly about your reference to one type of provider. This regulates only abortion clinics, which is kind of a double-edged sword, because if that were only a small proportion of abortions in Arizona, it would be pretty rational if it were really a health risk, if, you know, 5 percent were regulated and 95 weren't. But it's actually the opposite. Aren't almost all abortions on this record in Arizona performed at abortion clinics? So this law covers, like, 90-plus percent of? I believe that's an accurate statement, Your Honor. Okay. So it makes it more rational, but it doesn't – it seemed like you were using it to say, well, it doesn't really affect everybody because they could go somewhere besides an abortion clinic. Well, that really turns us to the medical necessity aspect, but I want to answer your equal protection argument first, Your Honor, and the standard there, of course, is rational basis. And the Eden decision provides the framework for this. Yeah. No, I wasn't trying to take you off of undue burden, which was – but it seems to play into undue burden, too, because if it only affects 5 percent of the providers and it's not much of a burden, but here it really affects most of them. I'm sorry. I took you off of the question. I'd like to try and answer both of those points, Your Honor. Under Eden, this Court has specifically said that the scheme does not violate equal protection if it distinguishes between doctors who perform less rather than more abortions. It also recognizes that there are limitations on the practical ability of the State to enforce any statute, including this. Now, there are – in addition to the fact that the vast majority of abortions are performed by abortion clinics, there – under this statute, it is still lawful in Arizona for hospitals, individual providers, and any other facility not categorized as an abortion clinic to provide these abortions. Now, given the State's finite resources, which is recognized as a valid equal protection basis, it is far more manageable for the Department of Health Services to monitor the compliance with the FDA protocol among the 10 to 15 abortion clinics that exist in the State than it is to attempt to monitor compliance among the Congress. Yeah, I mean, I agree with your point insofar as it deals with equal protection on a rational basis, but it also, I think, plays into the question of undue burden. Well, I think it does have some impact in that area as well, Your Honor. But what the Supreme Court made clear, among other things, in Casey, was that if an abortion regulation has the incidental effect of increasing the cost and reducing the availability of an abortion, that is not sufficient to invalidate it in a facial challenge such as this. And I think in this context, facial validity can never depend on where a third-party abortion provider chooses to locate a clinic or determines what services are going to be offered by the clinic, because — What weight does the term facial challenge bear here? Because whether we call it facial or as applied, I think the challenge, the basis for the challenge is that this Arizona statute imposes an undue burden within the meaning of Casey, which means that we don't really look only to the words of the statute, and it's not a facial challenge in that sense. We look to the effect of the statute. Isn't that right? There's a distinction between the medical necessity claim, which has to be brought up as an as-applied challenge, and the rest of the statute, which is a facial attack. So it's really a two-part — I have to say I'm stuck on the undue burden part of it, which is really an as-applied. Well, facial — What the consequence is. Maybe I don't want to use facial or as-applied. I just want to know, is this an undue burden within the meaning of Casey?  Well, what it means, Your Honor, is that the Fifth Circuit got it right, and so did the Sixth Circuit, and they followed Casey correctly. And that Judge Posner got it wrong? Well, if Judge Posner — if Judge Posner's decision is that the incremental  by this create a substantial obstacle by virtue of increasing the distance to an abortion clinic or the cost of an abortion, then, yes, he necessarily did get it wrong under Casey, if that's what he has held. Is he wrong in the sense of the way he sets up his analysis? That is to say, as I read Judge Posner, his analysis in sort of the abstract, without getting down to the application to a particular case, is that we evaluate whether the burden is undue by comparing the degree of the burden to the justification for the burden. Is he wrong in doing that? I don't think it's a sliding scale of that nature, Your Honor. You say he's wrong. If that's his analysis, if that is his analysis, then it must be, yes, because that's not how — So you think — you think that a trivial burden, such as give us your phone number, and a significant burden, like you have to wait two weeks and go only to a city of over a million, should be evaluated the same way, that the justification for the much greater burden doesn't have to be any stronger than the justification for give us your phone number? No. I think what's getting lost, Your Honor, is the distinction between the legal obstacle created by the statute itself and the incidental burdens that are recognized in Casey as not creating a substantial obstacle. And this case involves the latter. And as an example, in the Fifth Circuit decision in Abbott, the incidental effect of the statute was to cause women to drive 150 miles to obtain an abortion. And in this instance, the appellants have identified a driving distance of 134 miles as their burden. Abbott concluded that 150 miles was not enough to create a substantial burden. So even if the Court considers all of those to be relevant considerations, it's still insufficient here. And the Sixth Circuit case in DeWine really proves that, because in that case, the attempted to get a medication abortion in week eight and nine and were prevented from doing so by the statute. And in all nine instances, those women were able to obtain a safe surgical abortion. So the Court correctly concluded there that the burdens imposed by the statute did not prevent them from exercising the ultimate right to choose to terminate their pregnancy. It is the same situation here. Substantial obstacle requires that the statute prevent a large fraction of women affected by the statute from exercising that ultimate right. There's no evidence to that effect here. And, in fact, it appears that few, if any, women would not be able to obtain a surgical abortion. What do you do with the declaration of Ms. Otterstein who says, I have seen some  pregnancy to term? That is to say, as I read what she says, the unavailability of the medication abortion has resulted, for these women, in their not getting an abortion. What do we do with that? Well, there's a medical disagreement on whether that circumstance ever arises, Your Honor. Well, you haven't done you don't have any evidence to the contrary at the moment. Actually, we do, Your Honor, by reference to the Abbott case, because there Texas introduced testimony by a board-certified obstetrician who said that there would never be an abortion. There's no evidence in this record, though? No, there was no evidence developed on that. Would you, you have just a few seconds left. Would you address the medical necessity argument? Certainly, Your Honor. Medical necessity under Gonzales v. Carhartt can only be addressed as an as-applied challenge. It is not presented as an as-applied challenge in this case. And it's not simply a matter of the prayer for relief, because if that were the case and the appellants here were attempting to present it as an as-applied challenge, they wouldn't be asking to enjoin enforcement altogether. They would be limiting it to medical necessity cases. And that's not the relief they asked for. Secondly, there is, in this case, a built-in medical necessity exception because the statute is limited in its scope to abortion clinics, which, as I mentioned earlier, leaves available other providers who can still do a medical exception. And finally, as both Gonzales v. Carhartt and Abbott recognize, when there is medical uncertainty about the need, then that cannot carry the burden that the plaintiffs have to carry in this case. Okay. Thank you, Your Honor. Thank you. Thank you, counsel. Ms. Klattman, you have some time remaining. I'd like to address a few of defendant's points. To begin with, defendant is misrepresenting both Casey and Gonzales. Casey does not say that cost or additional distance or delay cannot amount to a substantial obstacle. Casey is saying that it can, but on the record before the court there, the burdens that were shown did not rise to that level. Gonzales was not faced with two substantively different procedures, one surgical and one non-surgical. And this distinction cuts to the heart of the bodily integrity interest in this case and recognized by Casey. Defendant represents that we are conceding that the law was enacted pursuant to a legitimate interest because we are not making a purpose claim. That is not the case. We do not concede that this was a valid exercise of the state's interest in maternal health. To the contrary. Defendant's argument about a 100% correlation between infection incidence and off-label use is completely off-base. To begin with, as defendant glossed over, the FDA found no causal connection. In addition, defendant ignores that fewer, most likely about 3,000 women or a few thousand women have ever used the final printing label regimen in the United States as compared with over 2 million women using an alternative regimen. It's impossible to compare those statistics given the extremely low complication rate associated with medication abortion. It is not surprising that of less than 3,000 women, there was a low incidence of complications. There is no evidence, contrary to what defendant suggests, that at-home administration of mesoprostol is an issue. To the contrary, ACOG gave its highest level of recommendation based on large-scale clinical trials demonstrating that women can safely, effectively administer mesoprostol at home and that it offers significant advantages to them. And that is in the record at 59 and 60. On the issue of burden, defendant suggests that this is not much of a burden because it doesn't cover all providers. But that ignores that it covers the very providers who are known abortion providers. And there's evidence in the record that there is extreme hostility to abortion in Arizona. And so to expect that providers who are not licensed abortion clinics are going to be advertising themselves to patients or making clear that they provide these services is completely unrealistic, and it's certainly not in the record. As for extra miles, defendant represents the burden as 134 miles to get from Flagstaff to Glendale, but ignores defendant's – ignores our plaintiff's evidence that some patients are going to have to drive up to over 700 miles round trip and have to make an additional unnecessary trip. Defendant suggests that there is no evidence that this law would prevent women from obtaining an abortion. To the contrary, Mr. Howard's rebuttal declaration draws on statistics from the period when Planned Parenthood Flagstaff was forced to close its clinic temporarily. And those statistics show that many women were prevented altogether from obtaining an abortion. Thank you, counsel. Your time has expired, and the case just argued is submitted. We appreciate very much the excellent and helpful arguments from both counsel. And we are adjourned for this morning's session.
judges: Graber, Fletcher, Paez